IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

W. T. PURNELL, JR., }
 }
   Plaintiff, }
 }
v. } Case No.: CV 01-P-1557-NE
 }
UNITED STATES DEPARTMENT OF }
THE ARMY, }
 }
   Defendant. }

## MEMORANDUM OPINION

Pending before the court is Defendant United States Department of the Army's (the "Army") Motion for Summary Judgment (Doc. #58) filed on July 26, 2004. The court has thoroughly reviewed the summary judgment record and held a hearing on October 1, 2004, in which the parties presented oral argument regarding summary judgment. The Army has presented both procedural and substantive bases for summary judgment. That is, the Army contends Plaintiff's claims cannot survive summary judgment because (1) he did not exhaust administrative requirements and (2) he was discharged for a legitimate, non-discriminatory reason. The court is persuaded that summary judgment is due to be granted in favor of the Army on procedural grounds. Because the court concludes that Plaintiff's failure to exhaust his administrative remedies at the EEOC level procedurally bars this case from going forward, it does not reach the substantive issues raised by the parties on summary judgment.

I.  **Statement of Facts**[1]

Plaintiff was hired as a non-appropriated fund flexible employee[2] of the Army in April 1994. (Defendant's Admitted Fact ("AF") No. 1). The position that Plaintiff held when the Army terminated his employment was that of Lead Reservation Clerk at the Redstone Arsenal in Huntsville, Alabama. (AF Nos. 1, 4). Plaintiff worked as Reservation Clerk beginning in April 1994, and his employment ended when the Army discharged him on September 13, 1995. (AF Nos. 1, 71).

Angela Morrow, the manager of the Reservation Center, was the person responsible for making the decision to discharge Plaintiff. (AF Nos. 2, 32). Ms. Morrow testified about several reasons she had for dismissing Plaintiff including repetitive aggressive and disrespectful behavior toward her and other employees, as well as reported tardiness. (AF No. 34). Plaintiff challenges the legitimacy of this firing and maintains that his employment was terminated because of his race, color, and gender. (AF No. 75; Disputed Fact ("DF") No. 33).

Plaintiff learned about Ms. Morrow's decision to discharge him over the telephone on September 13, 1995. (AF No. 32). At the time of his discharge, Plaintiff had concerns about preferential treatment. (AF No. 26). Shortly after learning of the news, and on that same date, he went to the Reservation Center to confront Ms. Morrow about his separation. (AF Nos. 68-70). When Plaintiff arrived, he was angry, loud, and cursing. (AF Nos. 68-70). Plaintiff admits that he

---

[1] The court has reviewed the evidence and all factual inferences arising from it in the light most favorable to the nonmoving party.

[2] At oral argument, counsel for the Army explained that a flexible employee is similar to an at will employee in the private sector in that the flexible employee does not have the same expectancy of continued employment as non-flexible Army employees.

was loud and confrontational because he wanted other employees to know that he had a complaint about discrimination based upon race and gender. (AF Nos. 68-70).

Although Plaintiff was fired on September 13, 1995, he did not seek EEO counseling until January 2, 1996, which is over 45 days after the date of his discharge. (AF No. 71). Plaintiff blames this delay in seeking EEO counseling upon Ms. Morrow telling him that the Army could no longer keep him due to budget constraints.[3] (AF No. 72). Plaintiff further argues that it was not until he learned about an advertisement for an open reservation position that he had reason to suspect that Ms. Morrow had discriminated against him.

Plaintiff filed a formal complaint of discrimination on August 22, 1996. (AF No. 75). In his third amended complaint, Plaintiff asserts he was discharged because of his race, color, and sex, and seeks relief for the Army's alleged violation of his Title VII rights. (Doc. #36).

With respect to Plaintiff's knowledge about the Army's advertising for an open reservation position, Plaintiff testified during the administrative process that:

> [t]his was in October [1995] when I saw–I read an ad in the newspaper. It is a reason to suspect that as the lead Reservation Clerk, the position was mine. I had a reason to suspect. I did not say that it was actually the position that I worked, but there was a position in the newspaper that said Lead Reservation Clerk.

(Purnell Bates No. 0137). The Army dismissed the complaint for lack of timeliness under the applicable EEOC regulations. (Plaintiff's Admitted Fact No. 201). Ultimately, on December 8, 2000, the EEOC issued a decision which determined that although Plaintiff's complaint was timely,

---

[3]Plaintiff also asserts that his testimony, as well as other evidence, creates an issue of fact regarding whether Ms. Morrow's explanation for his discharge–aggressive and confrontational behavior, as well as tardiness–is a pretext for discrimination. As noted above, the court need not decide that issue because summary judgment is due to be granted to the Army on other grounds.

no discrimination had taken place; therefore, it affirmed the Army's Final Agency Decision on other grounds. (AF No. 76). Plaintiff filed his complaint in this court on May 24, 2001. (Docs. #1, #2).

## II.   Summary Judgment Standard

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R .Civ. P. 56(c). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A plaintiff in an employment discrimination case maintains the ultimate burden of proving that the adverse employment decision was made because of intentional discrimination. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509-12 (1993); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir. 1984). Although the Supreme Court previously established the basic allocation of burdens and order of proof in a disparate treatment case, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981), as modified by *Desert Palace v. Costa*, 539 U.S. 90 (2003), that allocation scheme applies only in cases where there is no direct evidence of discrimination, *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987).

Under the *McDonnell Douglas/Burdine* scheme, a plaintiff first has the burden of proving by a preponderance of evidence a *prima facie* case of discrimination. Second, once the plaintiff proves a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate,

nondiscriminatory reason for its employment decision. Finally, if the defendant carries its burden, the plaintiff must *either* prove by a preponderance of the evidence that the legitimate reasons offered by the defendant are merely a pretext for discrimination *or* present sufficient evidence, of any type, for a reasonable jury to conclude that discrimination was a "motivating factor" for the employment action, even though defendant's legitimate reason may also be true or have played some role in the decision. *McDonnell Douglas Corp.*, 411 U.S. at 802-05; *Burdine*, 450 U.S. at 252-54; *Desert Palace*, 539 U.S. at 101-02.

### III. Analysis

#### A. Plaintiff's Noncompliance with 29 C.F.R. § 1614.105 Bars his Claims.

As his complaint addresses actions taken against him when he was an employee of the Army, Plaintiff's rights to challenge alleged discriminatory acts are governed by administrative rules that differ in many respects from those applicable to employees in the private or state sector. One such different rule is contained in 29 C.F.R. § 1614.105, which addresses pre-complaint processing for federal sector employees and provides in pertinent part:

> (a)  Aggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age or handicap must consult a Counselor prior to filling a complaint in order to try to informally resolve the matter.
>
>  (1)  An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.
>
>  (2)  The agency or the Commission shall extend the 45-day time limit in paragraph (a)(1) of this section when the individual shows that he or she was not notified of the time limits and was not aware of them, that the or she did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred,

5

>that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.

As its language provides and the parties herein have agreed,[4] 29 C.F.R. § 1614.105 requires that federal sector employee contact an EEO counselor within 45 days of a suspected discriminatory act. Consequently, as a general rule, a federal plaintiff is required to initiate contact with an EEO counselor within 45 days of the date of the challenged action. Just as with the 180-day period that applies to private Title VII charge filers (*see Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 660 (11th Cir. 1993), *cert. denied*, 513 U.S. 814 (1994)), a court may toll the 45-day time period in the event that a plaintiff has no reason to believe he was a victim of unlawful discrimination. However, logically, a federal plaintiff, like other Title VII plaintiffs, has the burden of establishing that tolling is appropriate. *Cf. Jackson v. Seaboard Coast Line R. Co.*, 678 F.2d 992, 1010 (11th Cir. 1982) (detailing applicable pleading and burden of proof requirements for Title VII administrative preconditions applicable to private plaintiffs). Further, absent a sufficient showing that would justify tolling, if a federal government employee fails to timely notify an EEO counselor about his belief that he is the victim of discrimination, he also will be found to have failed to exhaust his administrative remedies under 29 C.F.R. § 1614.105.

---

[4] While it does not appear that either the Eleventh Circuit or the United States Supreme Court has ever issued a reported decision analyzing a dismissal under 29 C.F.R. § 1614.105, the former has made clear that the unexcused failure to timely initiate an administrative discrimination complaint results in the dismissal of a subsequently filed Title VII lawsuit. *See e.g., Manning v. Carling*, 786 F.2d 1108, 1109 (11th Cir. 1986). At the hearing on October 1, 2004, the parties stipulated that compliance with 29 C.F.R. § 1614.105 is a mandatory prerequisite to maintaining litigation against the Army as a federal sector employee. Consistent with the parties' agreement on this issue, the court sees no reason why the legal analysis applicable to the administrative prerequisite that a federal Title VII plaintiff contact an EEO counselor should be any different than a review of whether a non-federal Title VII plaintiff has filed a timely EEOC charge.

After a thorough review of the record, the court finds that, based upon the undisputed evidence, Plaintiff has failed to satisfy the requirements of 29 C.F.R. § 1614.105. The "personnel action" Plaintiff challenges in this case (his discharge) took place on September 13, 1995. Therefore, absent any equitable modification, Plaintiff was required to satisfy § 1614.105's requirements on or before October 28, 1995, the date 45 days after September 13, 1995.[5] *See* 29 C.F.R. § 1614.105(a)(1).

There is a dispute of fact regarding what Ms. Morrow told Plaintiff as to the reason for his discharge. (AF No. 36). Plaintiff's position, which the court must assume to be true for purposes of this motion, is that Ms. Morrow told him he was being let go due to budgetary constraints. Based upon this disputed fact, Plaintiff argues that the 45-day period was tolled until he learned his old job was being advertised by the Army. However, his argument fails because it is undercut by both Plaintiff's own testimony and factual stipulations in this case.

As an initial matter, the Rule 56 record shows that there is no dispute that Plaintiff believed he was a victim of both race <u>and</u> gender discrimination[6] when he was informed of his firing. After learning of his discharge on September 13, 1995 (*see* AF No. 32), Plaintiff went to the Redstone

---

[5]Alternatively, the record reflects that the EEOC measured timeliness under 29 C.F.R. § 1614.105(a)(1) by subtracting 45 days from January 2, 1996 (the date on which Plaintiff contacted the EEO counselor), and indicated that Plaintiff's concerns about discrimination must not have arisen prior to mid-November 1995 for his claims to be timely. Either method of calculation (*i.e.*, counting 45 days forward from the date he was discharged (September 13, 1995), or 45 days back from the date he contacted an EEO counselor (January 2, 1996)) makes clear that Plaintiff's attempt to comply with § 1614.105 was untimely due to the undisputed fact that at the time of his discharge, Plaintiff suspected that he was a victim of race and gender discrimination. (AF No. 70).

[6]At oral argument, Plaintiff asserted that, even if he suspected race discrimination on September 13, 1995 (the date of his discharge), there is no evidence he should have suspected gender discrimination at that time. The parties stipulation, contained in AF No. 70, precludes such an argument.

7

Arsenal Reservation Center to confront Ms. Morrow about the termination of his employment. (AF Nos. 68-70). When Plaintiff arrived at the Reservation Center, he was angry. (AF Nos. 68-70). He admits he was loud and that he may have been cursing. (AF No. 69). Plaintiff has conceded that the reason "he was loud and confrontational [is] because he wanted the [people at the Reservation Center] to know he had a complaint about being discriminated against based on race and gender."[7] (AF No. 70).

Based on this admission, this case presents an even stronger basis for rejecting the application of equitable tolling than existed in *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428 (11th Cir. 1998). In *Turlington,* an ADEA case, the Eleventh Circuit ruled that the plaintiff could not rely on the theory of equitable tolling to preserve his discriminatory training claim when he "protested vigorously against his failure to receive the same training opportunities offered to his younger co-workers." *Id.* at 1435. The same result must occur here where Plaintiff was "loud and confrontational" in complaining about his discharge because he believed he was "being discriminated against based on race and gender." (AF No. 70). Plaintiff, by his own admission, was on notice of sufficient facts at the time of his discharge[8] to cause a person with a reasonably prudent regard for his rights to believe he was discriminated against. *See Sturniolo v. Sheaffer, Eaton, Inc.*,

---

[7]Of course, Plaintiff and his counsel had no choice but to admit these facts given Plaintiff's own deposition testimony. *See* Plaintiff's Depo. 84-86.

[8]Even if the undisputed evidence before the court, and specifically AF No. 70, did not demonstrate that Plaintiff was suspicious about his discharge being motivated by discrimination both race and gender as early as September 13, 1995 (and it does), the Army would still be entitled to prevail on summary judgment. Plaintiff testified during the administrative investigation into his EEO complaint that at some point in October 1995, he saw a newspaper advertisement that suggested the Army was advertising and/or seeking applicants for his old job or one like it. He asserted at oral argument that he did not become sufficiently suspicious of gender discrimination until seeing that advertisement.

8

15 F.3d 1023, 1025 (11th Cir. 1994) (*citing Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924, 931 (5th Cir. 1975));[9] *see also Hill v. Metropolitan Atlanta Rapid Transit Auth.*, 841 F.2d 1533, 1545 (11th Cir. 1988) (the 180 days begins running from the date the employee knows or reasonably should know that he or she has been discriminated against). "It is not necessary for a plaintiff to know all the facts that support his claim in order to file a claim." *Sturniolo*, 15 F.3d at 1025 (*citing Blumberg v. HCA Management Co.*, 848 F.2d 642, 645 (5th Cir. 1988)("[A] plaintiff who is aware that [he] is being replaced in a position [he] believes [he] is able to handle by a person outside the protected age group knows enough to support filing a claim."), *cert. denied*, 488 U.S. 1007 (1989)).

Plaintiff's assertion that he did not know he was the victim of gender discrimination – as opposed to race discrimination – until seeing the newspaper ad[10] is flawed for at least three reasons: (1) Plaintiff's own testimony and fact stipulations undercut his argument (*see* Plaintiff's Depo. 84-87; AF No. 70 (Plaintiff confrontational on September 13, 1995 because he wanted others to know he had a complaint about race <u>and</u> gender discrimination)); (2) the record does not demonstrate any

---

[9]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

[10]In making this argument, it is unclear whether Plaintiff is relying upon the doctrine of equitable tolling or the related but distinct doctrine of equitable estoppel. Equitable tolling applies when a Title VII plaintiff "'despite all due diligence is unable to obtain vital information bearing on the existence of his claim.'" *Dring v. McDonnell Douglas Corp.*, 58 F.3d 1323, 1328 (8th Cir. 1995) (quoting *Chakonas v. City of Chicago*, 42 F.3d 1132, 1135 (7th Cir. 1994)). (Cited by the Eleventh Circuit in *Browning v. AT&T Paradyne*, 120 F.3d 222, 226 (11th Cir. 1997)). Equitable estoppel applies when "'a defendant takes active steps to prevent a plaintiff from suing on time.'" *Dring*, 58 F.3d at 1329 (quoting *Chaknoas*, 42 F.3d at 1136). In any event, the court rules that Plaintiff cannot succeed under either doctrine. The 45-day time period was not tolled because Plaintiff admits he believed he was the victim of discrimination on the date he was discharged. Likewise, the Army is not estopped here because even if Ms. Morrow told Plaintiff his discharge was for budgetary reasons he still believed it was discriminatory and even went that day to the Reservation Center to protest and confront her about it.

intervening event that would serve as a basis to equitably modify the October 28, 1995 cutoff date;[11] and (3) Plaintiff testified during the EEO investigation in 1998 that he saw the newspaper in October 1995[12] – therefore, even if Plaintiff could show that to be the first time he became "suspicious" (which would be inconsistent with his admissions in this case), his January 2, 1996 informal complaint was still untimely.[13] Therefore, because no reasonable jury could conclude that Plaintiff's contact with the EEO counselor on January 2, 1996, was timely under 29 C.F.R. § 1614.105, Plaintiff's claims are procedurally barred for his failure to adequately exhaust administrative remedies.[14]

      **B.**    **The EEOC's Decision on Plaintiff's Failure to Exhaust Administrative Remedies is Not Binding on This Court.**

In his written opposition to summary judgment, Plaintiff points to the EEOC's statement that his initial contact with the counselor was timely and asserts this court is bound by it. Such an argument is simply off the mark. The court is aware of the rule that district courts are required to "<u>enforce</u> final EEOC decisions <u>favorable to federal employees when requested</u> to do so." *Moore v.*

---

[11]Indeed, even when he saw the advertisement there is no evidence that Plaintiff knew who had been (or would be) hired into the reservation clerk position and therefore there were no additional facts presented to him then that would, as he asserts, raise a gender-related red flag for him.

[12]Plaintiff has now taken the position that he saw the October 1995 advertisement in January 1996. His attempt in his 2004 deposition to contradict his own six year old sworn testimony given during the EEO investigation necessarily fails because he has stipulated that he believed on September 13, 1995 that he was the victim of race and gender discrimination.

[13]For example, even if Plaintiff saw the advertisement on the last day of October–i.e. October 31–he was required to contact an EEO counselor within 45 days of that date (i.e., on or before December 15, 1995).

[14]Notably, Plaintiff did not directly raise any arguments regarding tolling or equitable estoppel in his written opposition.

*Devine*, 780 F.2d 1559, 1560 (11th Cir. 1986) (emphasis added). This rule is of no help to Plaintiff in this case, however. First, the EEOC did not issue a decision favorable to Plaintiff. It ruled against him, specifically finding no discrimination occurred. Second, this action is not one in which Plaintiff seeks enforcement of a final EEOC decision. Rather, Plaintiff has filed this Title VII action because he undoubtedly disagreed with the EEOC's finding of no discrimination. At best, he seeks only to "enforce" the EEOC's procedural ruling, and rather dubious ruling at that, that he timely initiated contact with an EEO counselor. Where, as here, a federal employee seeks *de novo* review of the EEOC's determination, he cannot complain if the district court independently examines and resolves the issues in the case. *See id.* at 1564. This is particularly the case given Plaintiff's (1) admission in this litigation that he believed on September 13, 1995 he was the victim of race and gender discrimination (AF No. 70), and (2) failure to contact an EEO counselor until January 2, 1996 (some 111 days later). Even if this court believed, based upon the evidence before it, that the EEOC was correct in finding that Plaintiff's complaint was timely (and it does not), there is a key fact present here about which the EEOC was not aware: Plaintiff, in responding to the Army's summary judgment motion, admitted that at the time of his discharge he believed he was the victim of race and gender discrimination. (AF No. 70). That admitted fact alone is enough to find that Plaintiff's contact of an EEO counselor on January 2, 1996, was not timely.

**IV.    Conclusion**

The Army has met its burden on summary judgment. Conversely, Plaintiff has not established that the applicable 45-day period should be equitably modified. There are no material facts in dispute, and the Army is entitled to judgment as a matter of law. The court will enter an order, contemporaneously herewith, dismissing Plaintiff's complaint with prejudice in conjunction

with this decision.

     **DONE** and **ORDERED** this \_\_\_13th\_\_\_ day of October, 2004.

                                         **R. DAVID PROCTOR**
                                         UNITED STATES DISTRICT JUDGE